The COMMONWEALTH OF PUERTO RICO, Plaintiff,

v.

PRICE COMMISSION et al., Defendants.

Civ. No. 229–72.

United States District Court,
D. Puerto Rico.

March 15, 1972.

**1309**

Wallace Gonzalez Oliver, Atty. Gen., Jose Enrique Amadeo, Deputy Atty. Gen., Gilberto Gierbolini, Sol. Gen., San Juan, P. R., for plaintiff.

Julio Morales, U. S. Dist. Atty., San Juan, P. R., for Price Commission.

Ragan & Mason, Washington, D. C., Jimenez & Fuste, San Juan, P. R., for Sea Land Service.

Bird & Bird, San Juan, P. R., Coles & Goertner, Washington, D. C., for Seatrain Lines.

## ORDER

TOLEDO, District Judge.

On March 8, 1972 codefendant, Sea-Land Service, Inc., filed a Motion to Increase Bond, requesting an amendment to the Temporary Restraining Order issued by this Court on March 7, 1972, so as to increase the security for the payment of costs and damages which may be incurred or suffered by any party who might have been wrongfully enjoined or restrained.

For the consideration of this motion, the following statement of facts is pertinent:

On March 7, 1972, this Court issued a Temporary Restraining Order providing, among other things, that codefendant, Sea-Land Service, Inc. be restrained and enjoined from giving further effect to, collecting increased freight charges pursuant to, or taking any action pursuant to, Supplement Number 9 to Sea-Land Service, Inc., Tariff FMC–F 21 and Supplement Number 9 to Sea-Land Service, Inc., Tariff FMC–F 18. Said Order was issued on condition that plaintiff first give security in the sum of $100,000.00 for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Plaintiff complied with the posting of the required bond on March 8, 1972, at 12:30 P.M. On that same day codefendant, Sea-Land Service, Inc., filed the motion herein under consideration, requesting that the bond be increased from $100,000.00 to $290,000.00. Said codefendant accompanied its Motion with a supporting affidavit [1] and a "Memorandum of Points and Authorities". Plaintiff replied with a Motion and Memorandum in Opposition.

At the hearing on the Motion held on March 10, 1972, all parties appeared represented by counsel and were heard on the matter.

The United States Attorney, in representation of the United States Government and the Price Commission, assumed no position as to the Motion now under consideration.

After duly considering the arguments and memoranda filed by the parties concerned, this Court hereby makes the following findings:

The amount of security bond required for the issuance of a Temporary Restraining Order is a matter that falls within the ample range of discretion of

---

[1]. The attached affidavit of Mr. John F. Moyniham, Comptroller of the Caribbean Group of Sea-Land Service, Inc., in the pertinent part, states that because of Sea-Land's compliance with the provisions of the Temporary Restraining Order, entered by this Court on March 7, 1972, said codefendant will suffer a loss of higher revenues, due to the charging of the lower freight charges in the amount of $29,000.00 a day or $290,000.00 over the ten day period of the extension of the Temporary Restraining Order. Said affidavit fails to express how this $29,-000.00 a day figure is arrived at.

this Court. Rule 65(c) of the Federal Rules of Civil Procedure, Title 28, United States Code, provides for the posting of a bond in the amount that the Court deems proper.[2] This, of course entails the power of discretion on the part of this Court in arriving at what it considers to be adequate and sufficient security. Detroit Trust Company v. Campbell River Lumber Co. (9 Cir. 1938), 98 F.2d 389; Washington Capitol Basketball Club, Inc. v. Barry (D.C.Calif.1969), 304 F.Supp. 1193.

■ A movant who requests an increase in the amount of security required by a Court must consider all of the offsetting factors involved which may have an effect on the net result of the estimated costs or damages to be incurred. Washington Capitol Basketball Club, Inc. v. Barry, supra. Codefendant, Sea-Land Service, Inc., argues that the loss of higher revenues because of charging the lower freight rates will reduce its earnings by approximately $29,000.00 per day. The only evidence in support of this claim is the affidavit mentioned about and explained in our footnote 1. Aside from the fact that said statement is obviously a self-serving document, there is nothing in it to show that the offsetting factors, such as salaries, general expenses, taxes, etc., were considered in arriving at the conclusion that defendant would suffer a $29,000.00 a day reduction in earnings. These offsetting factors must be considered since the estimated amount of damages must be in terms of a net figure. Washington Capitol Basketball Club, Inc. v. Barry, supra.

Furthermore, codefendant, Sea-Land Service, Inc., must also consider the off-setting factors of the increased clientele and revenues to be derived, as a result of being placed in a more competitive position in relation to the other major carriers. Proof of this is the fact that Sea-Land Service, Inc. applied to the Federal Maritime Commission, on February 22, 1972,[3] for an exception to the general increased rates pursuant to Supplement No. 9 to Sea-Land Service, Inc., Tariff FMC–F 21 and Supplement No. 9 to Sea-Land Service, Inc., Tariff FMC–F18. The exception required would provide for lower rates in at least four areas of the services provided by defendant as a carrier.

Although it may be true that in its application to the Federal Maritime Commission (Special Permission Application No. 311 of February 22, 1972), defendant sought an increase in its rates which it felt were not remunerative and to maintain its existing parity with Transamerican Trailer Transport (T.T T.) on rates which it felt were remunerative, it is also true that codefendant argued that "the threatened loss of the particular traffic, for which exception to the general was sought, would have a more detrimental effect on the financial position of Sea-Land than the temporary loss of the additional revenue to be derived from the full general increase."

It is clear that defendant has not taken into account the various offsetting factors discussed above.

■ In requesting an increase in the amount of security required for the issuance of a Temporary Restraining Order, the burden is upon the movant to place the Court in a position to make a determination whether such increase is

---

2. Rule 65(c) of the Federal Rules of Civil Procedure, Title 28, United States Code, provides in its pertinent part:

"No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.
\* \* \*"

3. A copy of Special Permission Application No. 311 filed by codefendant, Sea-Land Service, Inc. in the Federal Maritime Commission, on February 22, 1972, was made part of plaintiff's Memorandum in Opposition to Increase of Bond.

justified.[4] The movant has not met this requirement as to the present motion.

In view of the foregoing and being duly advised in the premises, the Court hereby denies codefendant, Sea-Land Service, Inc.'s motion to increase bond.

It is so ordered.

4. When this Court ordered the plaintiff to post security in the sum of $100,000.00, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, Title 28, United States Code, it was aware that a party subject to a temporary restraining order may not recover an amount in excess of the fixed sum for security, if damages are caused by the temporary restraining order being improvidently issued. The Court in its determination considered what it deemed the reasonable value of damages that could be suffered by co-defendant Sea-Land Service, Inc., if it were wrongfully enjoined or restrained.