**Mary STOCKSLAGER et al.,**
**Appellants,**

v.

**CARROLL ELECTRIC COOPERATIVE**
**CORPORATION et al., Appellees.**

**No. 75–1752.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 10, 1975.

Decided Jan. 7, 1976.

John B. Hawley, Fayetteville, Ark., for appellants.

Appearance for Federal appellees was made by Walter Kiechel, Jr., Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C.

James F. Dickson, Fayetteville, Ark., for appellees.

Before ROSS, STEPHENSON and WEBSTER, Circuit Judges.

ROSS, Circuit Judge.

This action was brought by several land owners and the Arkansas Ecology Center to enjoin the construction of electric high voltage lines across or near the lands of some of the individual plaintiffs. The named defendant was Carroll Electric Cooperative Corporation, which was planning the construction of the line. In its complaint the plaintiffs alleged generally that the defendant cooperative was receiving federal funds for the project; that the project would adversely affect the environment and that the defendant had "failed to include in its reports to federal agencies * * * a detailed statement concerning the environmental impact of the proposed action * * *".

After a motion to dismiss was filed on behalf of the defendants pointing out that 42 U.S.C. § 4332 placed the duty of filing environmental impact statements on "all agencies of the Federal Government" rather than on the cooperative, the plaintiffs amended their complaint to include David A. Hamil, Administrator of the Rural Electrification Administration.

On September 2, 1975, two orders were entered. The first order dismissed the complaint of certain named plaintiffs against whom state condemnation proceedings had already been instituted by the cooperative on the grounds that "in view of 28 U.S.C. Section 2283, this court is without jurisdiction of the subject matter of this action as to these plaintiffs."[1] The named plaintiffs thus dismissed filed a notice of appeal from that order.

On the same date Judge Williams entered an order conditionally granting a preliminary injunction against Carroll Electric Corporation as to constructing the 69 kilovolt line. The preliminary in-

1. 28 U.S.C. § 2283. Stay of State court proceedings

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

junction was conditioned upon the posting of a $10,000 bond by the plaintiffs and further provided that the injunction "shall not prohibit construction upon lands which are the subject of condemnation actions in the state courts of Arkansas on May 16, 1975." This, again, was based on 28 U.S.C. § 2283 on the theory that the anti-injunction statute precluded the court from interfering with state court actions pending prior to the filing of this federal court action. Plaintiffs did not post the bond but appealed from those portions of the order relating to the bond and exempting the land of the plaintiffs already involved in condemnation actions.

Neither of the defendants cross-appealed so the validity of the injunction is not before us except as to the two conditions of the injunction heretofore described which are being challenged by the plaintiffs.

■ As to the appellants' first ground for appeal, the dismissal of several of the plaintiffs, the simple answer is that this court does not have jurisdiction to decide it. The dismissal of some of the plaintiffs, but not all, is not an appealable order in the absence of certification under Rule 54(b) of the Federal Rules of Civil Procedure. *See Lane v. Graves*, 518 F.2d 965 (8th Cir. 1975).

■ As to appellants' contention that the trial court should not have required a $10,000 bond we need only look to Rule 65(c) of the Federal Rules of Civil Procedure which provides as follows:

(c) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. * * *

The amount of the bond rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of that discretion. *Commonwealth of Puerto Rico v. Price Commission*, 342 F.Supp. 1308, 1309–1310 (D.P.R.1972); 7 J. Moore & J. Lucas, Moore's Federal Practice 65–94–65–95 (2d ed. 1975). We find no such abuse here and agree that a bond of at least $10,000 should have been required under the circumstances of this case.

The last question raised in this appeal is less easily disposed of. The district court granted a preliminary injunction against further construction of the power line except as to those lands which were the subject of condemnation proceedings in the Arkansas state courts prior to this federal court action. The reason given for limiting the scope of the injunction was the anti-injunction statute, 28 U.S.C. § 2283.

■ The anti-injunction statute prohibits interference with state court proceedings, subject to certain narrow exceptions.[2] The exception we are concerned with here, appearing on the face of section 2283, allows injunction of state court proceedings where "expressly authorized by Act of Congress." This exception was discussed in *Mitchum v. Foster*, 407 U.S. 225, 237–238, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). The Court stated that the statutory authorization need not expressly refer to section 2283 or expressly authorize injunction of state court proceedings. The question is whether the statute creates a federal right or remedy enforceable in a federal court of equity which can only be effectuated by injunction of the state court proceedings. We are satisfied that 42 U.S.C. § 4332 authorizes such an injunction.

42 U.S.C. § 4332(2)(C), the stated basis of the district court's preliminary injunction, requires that before taking any ma-

---

**2.** The exceptions identified in *Mitchum v. Foster*, 407 U.S. 225, 233–236, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) are: (1) Act of Congress (2) to protect a *res* over which the federal courts have first obtained jurisdiction (3) to enjoin relitigation of issues previously decided in federal litigation (4) when the United States or a federal agency asserting superior federal interests is plaintiff.

jor action which may affect environmental quality the responsible federal agency must prepare an environmental impact statement for submission to the President, the Council on Environmental Quality and the public. This requirement creates substantive and procedural rights enforceable in a federal court of equity. *See Environmental Defense Fund v. Froehlke*, 473 F.2d 346, 350–351, 353, 356 (8th Cir. 1972); *Environmental Defense Fund v. Corps of Engineers*, 470 F.2d 289, 297 (8th Cir. 1972), *cert. denied*, 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 160 (1973). In this case the plaintiffs seek to enforce these rights by requiring the Rural Electrification Administration to file an environmental impact statement in compliance with 42 U.S.C. § 4332 before authorizing federal loans to finance Carroll's project. The purpose of the statement is to insure consideration of the environmental consequences of the federal action, possible alternatives thereto which would have a less adverse effect, and reasons for the choice of the course of action in question; this decision-making process of the federal agency is required to be revealed to those outside the agency, including the public, and is subject to their critical evaluation. *Environmental Defense Fund v. Froehlke, supra*, 473 F.2d at 351. If an environmental impact statement is required, which we do not now decide, this entire process would be frustrated, if Carroll Electric is allowed to proceed with condemnation of lands and construction of the power line, because of loans that the REA has already authorized.

It is evident that the NEPA was enacted in response to deep concern about the deterioration of the national environment, and that it was felt that the best method of insuring environmental protection was by implementing a coordinated national policy. *See* U.S.Code Cong. & Admin.News, p. 2751 *passim* (1969). The words used throughout the Act indicate that Congress did not consider that halfway measures would suf-

fice; it was plainly the intent of Congress that the full power of the federal government be brought to bear upon the problem in order to effectuate the policies expressed. The declared policy of the United States is "to use *all practicable means and measures*" to preserve the quality of life in our country. 42 U.S.C. § 4331(a) (emphasis added). Subsection 4331(b) repeats this commitment "to *use all practicable means*." (Emphasis added.) Again in 42 U.S.C. § 4332: "The Congress authorizes and directs that, *to the fullest extent possible*: (1) the policies, regulations, and public laws of the United States *shall* be interpreted and administered in accordance with the policies set forth in this chapter  *  *  *." (Emphasis added.)

The primary responsibility for effectuating the policy of the NEPA is undoubtedly with the federal government. That fact distinguishes this case from *Clean Air Coordinating Committee v. Roth-Adam Fuel Co.*, 465 F.2d 323, 326–327 (7th Cir. 1972), *cert. denied*, 409 U.S. 1117, 93 S.Ct. 895, 34 L.Ed.2d 701 (1973). *Roth-Adam* involved a provision of the Clean Air Act, which placed primary responsibility for air quality with the states. 42 U.S.C. § 1857c–2(a). Since state agencies were selected by Congress as the means of developing air quality standards, the Seventh Circuit held that nothing in the Clean Air Act could be construed as an authorization to enjoin state proceedings to review the action developed by the state agency. In this case the plaintiffs seek to enforce 42 U.S.C. § 4332, a provision of the National Environmental Policy Act which applies only to federal agencies, requiring them to determine the effect of their actions on the national environment and to consider alternatives thereto. Surely, if and when state court proceedings are in derogation of the requirements placed on the federal government by Congress to carry out the national environmental policy, we would not be according the statutory language its full sweep if we did not find authority to enjoin the of-

fending state proceedings.³ Without passing on the merits of the substantive issues in the case,⁴ we hold that the trial court erred in determining that 28 U.S.C. § 2283 forbids interference with the state court condemnation proceedings, and that to the extent such interference is determined to be necessary to effectuate the purposes of 42 U.S.C. § 4332, 28 U.S.C. § 2283 is no bar.

This case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

---

3. In view of our decision that the anti-injunction statute does not apply to 42 U.S.C. § 4332, the trial court may wish to reinstate the dismissed plaintiffs, since they were dismissed on that basis.

4. It is Carroll Electric's contention that an environmental impact statement is not required because of applicable REA regulations. We do not reach this issue.