The TIMKEN COMPANY, Plaintiff,

v.

UNITED STATES, et al., Defendants,

NTN Bearing Corporation of America, Intervenor.

**Court No. 82–6–00890.**

United States Court of International Trade.

Aug. 1, 1983.

---

Eugene L. Stewart, Terence P. Stewart and Robert E. Ruggeri, Washington, D.C., for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Lit. Branch, Washington, D.C. (Velta A. Melnbrencis, New York City, on briefs), for defendants.

Barnes, Richardson & Colburn, Chicago, Ill. (James H. Lundquist, Robert E. Burke and Donald J. Unger, Chicago, Ill., on briefs), for intervenor NTN Bearing Corp. of America.

## Opinion and Order

MALETZ, Senior Judge:

Plaintiff The Timken Company (Timken) seeks through a motion for rehearing the issuance of a preliminary injunction enjoining the liquidation of entries of tapered roller bearings pending this court's review of the administrative record.[1] A nearly identical request was denied on December 22, 1982 in *The Timken Co. v. United States,* 4 CIT ——, 553 F.Supp. 1060 (1982). During the intervening seven months, however, the Court of Appeals for the Federal Circuit (CAFC) issued its opinion in *Zenith Radio Corp. v. United States,* 710 F.2d 806 (1983). That decision has a direct bearing on this court's earlier determination that Timken had failed to make the requisite showing of irreparable harm. *See Zenith,* at 810 ("the consequences of liquidation . . . constitute irreparable injury"). With this patina on the concept of irreparable harm, *see S.J. Stile Assoc., Ltd. v. Snyder,* 646 F.2d 522, 525 (CCPA 1981), it is now clear that Timken will suffer such harm or injury absent the issuance of a preliminary injunction.

For the reasons that follow, the court concludes that Timken has now met the four *Stile* criteria, *id.* at 525. Accordingly, its request for a preliminary injunction is hereby granted.

1. On June 25, 1982 Timken filed the present action challenging an administrative review conducted pursuant to section 751 of the Trade Agreements Act of 1979, 19 U.S.C. § 1675 (Supp. IV 1980) by the International Trade Administration of the Department of Commerce (ITA). As a result of that review an antidumping duty order, issued on August 18, 1976, was revoked in part. *See* 47 Fed.Reg. 25757 (1982).

2. Rule 59 provides in part:
Rule 59. *New Trials—Rehearings—Amendment of Judgments*
   (a) *Grounds.* A new trial or rehearing may be granted to all or any of the parties and on

Before turning to the merits, the court first addresses several procedural issues which, intervenor submits, foreclose consideration of Timken's motion.

## I

On July 1, 1983 Timken filed a motion for a rehearing pursuant to rule 59 of the rules of this court,[2] and a motion to alter or amend the judgment. On July 8, 1983 Timken filed an application for a preliminary injunction as an alternative to the July 1 motions. The court considers Timken's motion to be one for rehearing. *See* 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2804 at 35 (1973) ("The concept of a new trial under Rule 59 is broad enough to include a rehearing of any matter decided by the court without a jury"). Intervenor NTN Bearing Corp. of America (NBCA) argues that either a rule 59 motion or a motion for a preliminary injunction is barred for at least two reasons. First, on February 10, 1983 a motion for a rehearing of the December 22, 1982 denial of Timken's first application for a preliminary injunction was denied. Res judicata, it argues, thus precludes relitigation of the issues finally determined in the December 22 and February 10 orders. If Timken was dissatisfied with those orders, NBCA contends, it should have taken an appeal. Second, any rule 59 motion at this late date is out of time, given the 30-day filing deadline of rule 59(b).

While NBCA's position would not be without force if the present rule 59 motion related to a *final* judgment or order, the short answer is that Timken's motion is

all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. . . .
   (b) *Time for Motion.* A motion for a new trial or rehearing shall be served and filed not later than 30 days after the entry of the judgment or order.

directed to a rehearing of an order interlocutory in nature. Although it is true that an interlocutory order may be considered a final order in certain limited contexts, such as appeals under 28 U.S.C. § 1292(a), in the context of a rule 59 motion the court is of the view that in an action *sub judice,* where final judgment has not been entered, an order granting or denying a motion for a preliminary injunction is interlocutory. In other words, finality is not a monolithic, immutable concept, and hence an order may be final for some purposes, but interlocutory for others. *See* 1B J. Moore & T. Currier, *Moore's Federal Practice* ¶ 0.409[1] (2d ed. 1982); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4432 at 301 n. 6 (1981). And the court retains the plenary power to modify or alter its prior non-final rulings, particularly where the equitable powers of the court are invoked. *See United States v. Chicago,* 395 F.Supp. 329, 339–40 (N.D.Ill.), *aff'd,* 525 F.2d 695 (7th Cir.1975); 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 65.07 (2d ed. 1982). As noted in *Walsh v. ILA, Local 799,* 630 F.2d 864, 875 (1st Cir.1980), "The doctrine of res judicata is an equitable one, and a court is not bound to give res judicata effect to a previous judgment if an inequitable situation would thereby result."[3] In light of *Zenith* the interests of equity here dictate that Timken not be precluded from pressing its motion.

The court further finds nothing preclusive in Timken's decision not to take an appeal from this court's earlier orders. The appeal in *Zenith* was pending at the time, so that an appeal by Timken would clearly have been duplicative. Conservation of judicial resources is not something to be faulted.

■ Having concluded that Timken's motion involves a rehearing on an interlocutory rather than a final order, NBCA's second

contention that the motion is out of time under rule 59(b) is easily disposed of. For the time constraints of rule 59(b) apply only to final judgments or orders. "A motion addressed to the trial court for reconsideration of an interlocutory order is proper at any time prior to the final determination of the merits." *Graci v. United States,* 301 F.Supp. 947, 950 (E.D.La.1969), *aff'd,* 456 F.2d 20 (5th Cir.1971) (construing F.R.Civ.P. 59(b)). *See also* 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2812 at 87 (1973) ("the time limits of Rule 59 do not apply to a motion seeking a new trial in connection with an interlocutory judgment").

In sum, Timken's motion for a rehearing is timely filed and not barred by either rule 59 or res judicata. The court turns to a consideration of the merits.

## II

Although they have been stated so often in the course of this and other litigation as to resemble a litany, the four criteria for the issuance of a preliminary injunction still bear repeating. In order to prevail on a motion for a preliminary injunction the petitioner must show (1) that there is a substantial likelihood of success on the merits; (2) that without the relief requested the petitioner will be irreparably injured; (3) that the issuance of the relief requested will not substantially harm other interested parties; and (4) that the public interest would be served by the relief requested. *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958). *See also S.J. Stile Assoc., Ltd. v. Snyder; Washington Metropolitan Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C.Cir.1977). Inasmuch as the CAFC's recent opinion in *Zenith* furnished the impetus for Timken's present motions, the court will first consider the

---

**3.** NBCA's reliance on *Walsh* as authority for the position that orders involving the grant or denial of preliminary injunctions are final is misplaced. There, the applicant was engaged in barely disguised forum shopping, having made motions for a preliminary injunction in three identical actions which were filed in two

different district courts in two different circuits. In order to put an end to this repetitive and vexatious litigation, as well as to avoid the real possibility of inconsistent decisions, the First Circuit held that res judicata barred subsequent applications for a preliminary injunction. 630 F.2d at 869.

question of irreparable injury in light of that decision.

## A

### Irreparable Injury

The burden that Timken must meet to establish irreparable injury was elaborated in the *Stile* decision:

> Only a viable threat of serious harm which cannot be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined.... A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great. A presently existing, actual threat must be shown.

646 F.2d at 525 (citations omitted). The gloss which the CAFC's *Zenith* opinion adds to *Stile* is that while the injury must be serious and genuine, it need not be commercial or economic in nature. At 809–10. In that case Zenith, like Timken, sought to enjoin the liquidation of entries pending its judicial challenge of a section 751 review determination by the ITA.[4] In concluding that liquidation of those entries would constitute irreparable injury the CAFC provided the following detailed rationale:

> [L]iquidation would indeed eliminate the only remedy available to Zenith for an incorrect review determination by depriving the trial court of the ability to assess dumping duties on Zenith's competitors in accordance with a correct margin on entries in the '79–'80 review period. The result of liquidating the '79–'80 entries would not be economic only. In this case, Zenith's statutory right to obtain judicial review of the determination would be without meaning for the only entries permanently affected by that determination. In the context of Congressional intent in passing the Trade Agreements Act of 1979 and the existing finding of injury to the industry underlying T.D. 71–76, we

conclude that the consequences of liquidation do constitute irreparable injury.

Without a preliminary injunction, all of the entries occurring during the review period will be liquidated immediately, with dumping duties assessed in accordance with the margin set by the review determination. This result is required, in the absence of a preliminary injunction, by two sections of the Trade Agreements Act of 1979 [19 U.S.C. §§ 1516a(e) and (c)(1) (Supp. IV 1980)].

\*     \*     \*     \*     \*     \*

> The statutory scheme has no provision permitting reliquidation in this case or imposition of higher dumping duties after liquidation if Zenith is successful on the merits. Once liquidation occurs, a subsequent decision by the trial court on the merits of Zenith's challenge can have *no* effect on [those liquidated entries]....

\*     \*     \*     \*     \*     \*

> ... Accordingly, the inability of reviewing courts to meaningfully correct the review determination is irreparable injury that must be considered by the trial court along with the other pertinent factors recited in *Stile* to determine whether or not an injunction should issue.

*Id.* at 810, 811–12. In the present case there remain unliquidated approximately 121 entries for the period April 1978 to the date of partial revocation of the anti-dumping duty order (June 15, 1982), as well as 14 entries made after June 15, 1982. (This total does not include merchandise entered after January 19, 1983.) Thus, unless liquidation is enjoined Timken will forever lose its statutory right to challenge the alleged failure of the ITA to assess antidumping duties against those entries.[5]

Accordingly, on the basis of *Zenith,* Timken has met its burden of showing irreparable injury.

---

**4.** *See* 19 U.S.C. § 1675 (Supp. IV 1980).

**5.** The obverse of this is, of course, that the court would lose jurisdiction over the subject matter as a result of mootness. *Cf.* The All Writs Act, 28 U.S.C. § 1651(a) (1976).

## B

### Likelihood of Success on the Merits

■ Once the initial requisite showing of irreparable harm has been made, it is incumbent upon the applicant for a preliminary injunction to establish that there is a likelihood that it will prevail on the merits of its case.[6] It must be kept in mind, however, that the degree of likelihood of success is not determinative. 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2948 at 453 (1973). *See* Note, *Probability of Ultimate Success Held Unnecessary for Grant of Interlocutory Injunction,* 71 Colum.L.Rev. 165 (1971). Rather, it must be considered and balanced with the comparative injuries of the parties, an exercise involving a flexible interplay between the two criteria. *Packard Instrument Co. v. ANS, Inc.,* 416 F.2d 943, 945 (2d Cir.1969). Accordingly, although a showing that the moving party will be more severely prejudiced by a denial of the injunction than the opposing party would be by its grant does not remove the need to show some probability of prevailing on the merits, it does lower the standard that must be met. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 88 (9th Cir. 1975). In such a circumstance it will ordinarily be sufficient that the movant has raised questions which are "serious, substantial, difficult and doubtful." *County of Alameda v. Weinberger,* 520 F.2d 344, 349 n. 12 (9th Cir.1975).

In the present action Timken has raised at least three issues which amount to a substantial case on the merits. First, 19 C.F.R. § 353.54(b) provides that an application for the revocation of an antidumping duty order "will be considered only if there have been no sales at less than fair value for at least a two-year period following the date of publication" of the antidumping duty order. Here, the revocation of the antidumping duty order was premised on a finding of no less than fair value sales over a 19-month period, contrary to the clear expression in the ITA's own regulations to employ a 24-month review period.

Second, there is a substantial question raised regarding advertising allowances and adjustments since most of the foreign manufacturer's advertising was purportedly image advertising and unrelated to the imported merchandise.

Third, there are a host of legal issues raised by Timken which, although decided adversely to its position in *Brother Industries, Ltd. v. United States,* 3 CIT ——, 540 F.Supp. 1341 (1982), *appeal docketed sub nom. Smith-Corona Group v. United States,* 713 F.2d 1568 (CAFC 1982),[7] nevertheless raise questions which are serious, substantial and difficult. These issues include the propriety of (a) the exporter's sales price offset provided under 19 C.F.R. § 353.15(c), (b) the allowance for a difference in circumstances of sale of merchandise in the absence of a causal link establishing that there is some price effect, and (c) the deduction for inland freight from home market value.

Balancing these issues with the comparative harm to the parties should an injunction not issue—a factor which the court addresses next—it is clear that, while Timken's case is not free from significant difficulties, it has established a substantial case on the merits.

## C

### The Balance of Hardships

■ On the question of whether the issuance of a preliminary injunction will sub-

---

**6.** The Second Circuit frames the issue in an alternative way—whether there are "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor." *Coca-Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 315 (1982).

**7.** A stay pending appeal was entered by the court reviving the injunction suspending liqui-

dation of all entries. *Brother Industries, Ltd. v. United States,* 3 CIT ——, Slip Op. 82–50 (June 28, 1982). The criteria employed in issuing a stay pending appeal are substantially identical to those used in issuing a preliminary injunction. *See, e.g., EEOC v. County of Los Angeles,* 531 F.Supp. 122 (C.D.Cal.1982), *aff'd,* 706 F.2d 1039 (9th Cir.1983).

stantially harm other interested parties, the court is of the view that NBCA and the government will suffer little, if any, harm. The government is acting as a mere stakeholder and would be at most inconvenienced by the suspension of liquidation. NBCA, on the other hand, does stand to lose the use of monies deposited with the Customs Service which, but for the issuance of an injunction suspending liquidation, would have been returned to it. The court believes, however, that the posting of security will ameliorate, if not eliminate, this hardship. If security can compensate an adverse party for any harm the injunction is likely to inflict, the balance should be struck in favor of the movant. 11 C. Wright & A. Miller, *supra,* § 2948 at 44. *See* discussion on security, *infra,* at Part III. Moreover, balanced against the hardship to Timken—complete loss of its right to judicial review if the liquidation of these entries is not enjoined— the balance of hardships tips decidedly in Timken's favor.

### D

#### *The Public Interest*

■ The final major factor bearing on the court's discretion to issue or deny a preliminary injunction is the public interest. While "the public interest lies in the faithful execution by the Executive Branch of the laws enacted by Congress," *Zenith Radio Corp. v. United States,* 1 CIT 53, 58, 505 F.Supp. 216, 220 (1980), focusing on this factor is yet another way of inquiring "whether there are policy considerations that bear on whether the order should issue." 11 C. Wright & A. Miller, *supra,* § 2948 at 457. One clearly discernible policy consideration applicable here, and given great prominence in the CAFC's *Zenith* opinion, is a party's statutory right to a judicial hearing following an adverse agency determination. Short-circuiting that right by allowing the subject matter to escape the reach of a reviewing court cannot be in the public interest. There is, of course, a concomitant public interest in expeditious dispute resolution so that par-

ties in the position of NBCA are not unduly burdened by protracted litigation. Nevertheless, as between these two considerations—the interest in avoiding delay in liquidation occasioned by the issuance of injunctions and the interest in preserving a party's right to judicial review—the former must be subordinated to the latter. "[T]he mooting of this controversy, which is what would result in the absence of an injunction, would constitute a disservice to the public interest." *Zenith Radio Corp.,* 1 CIT at 58, 505 F.Supp. at 220.

Having thus considered each of the four *Stile* criteria and having concluded that Timken has satisfied each, the court turns finally to the issue of security.

### III

NBCA has filed a motion to establish security pursuant to rule 65(c) of the rules of this court. That rule provides in part:

> *Security.* No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained....

Timken reads this provision as a flat prohibition against requiring security for any party who is not actually enjoined or restrained. Accordingly, Timken concludes, since it is the government and not NBCA who will be enjoined, NBCA cannot request the posting of a bond or other security.

■ The court finds Timken's rather narrow construction of rule 65(c) to be skewed. Rule 65(c), properly read, merely provides that as a condition precedent to the issuance of a restraining order or preliminary injunction security shall first be given to protect the enjoined party. That rule does not state that security may not be required to protect other party-litigants who may be harmed by the operation of an injunction which is subsequently found to have been

wrongfully issued.[8] In the somewhat unique circumstances arising under United States trade law, the court is presented with a situation where NBCA, as intervenor, will be the only party harmed if it should develop that the injunction was improvidently issued; and yet the government, as stakeholder and liquidator, is the only party who can be enjoined.[9] The result argued for by Timken would be highly inequitable and cannot be countenanced by a court sitting in equity. In short, NBCA, as a party in interest, is entitled to security where, as here, it is plainly evident that it will have suffered a compensable loss—the use of the monies held by the government as duties—in the event the government is found to have been wrongfully enjoined.

Timken's two case authorities for its position that only the enjoined party may demand security are wholly unpersuasive. In *Puerto Rico v. Price Comm'n,* 342 F.Supp. 1308 (D.P.R.1972), a co-defendant's request for an increase in the amount of security bond was denied simply on the ground that "[t]he amount of security bond required . . . is a matter that falls within the ample range of discretion" of the court. *Id.* at 1309–10. Similarly unavailing is *Powelton Civic Home Owners Ass'n v. HUD,* 284 F.Supp. 809 (E.D.Pa.1968). The pivotal language of that opinion explains why security was not required:

> We have been concerned only with the legality under federal law of tne disbursement of federal funds by federal officers. As the plaintiffs explained in their brief and at oral argument, the Philadelphia Redevelopment Authority was named as a party defendant merely as a courtesy and in order to allow the Court to hear the local agency's point of

view. They were not indispensable defendants; *nor have they been legally affected by our decision in this case.*

*Id.* at 814 (emphasis added). Unlike the situation in *Powelton,* here NBCA will be denied its legal right to a refund of duties deposited with the Customs Service by operation of the preliminary injunction. Whether such denial is wrongful *vel non* only future events will prove. The fact remains, however, that NBCA will be legally affected by the decision on the merits in this action. Accordingly, NBCA's motion to establish security is granted.

■ Timken shall be required to post a bond or other good and sufficient security in the amount of $100,000.00. This figure reflects the amount of duty refunds presently due NBCA multiplied by (1) simple interest at an annual rate of 10% and (2) the estimated duration of these proceedings, that being the period from July 8, 1983 (the date on which NBCA would have received duty refunds but for the temporary restraining order) until final judgment is entered in this action.[10] Any amount of security based on duty deposits on future entries, or on criteria other than interest computed on refunds which are known to be due, would be highly speculative. Given this court's discretionary power under rule 65(c), coupled with the imprecise measure of some of the elements of damage, the court believes that security of $100,000.00 is adequate and reasonable. *See* 11 C. Wright & A. Miller, *supra,* § 2954 at 525–26.

V

In view of the foregoing it is hereby ordered:

1. That plaintiff's motion for a rehearing on its application for a preliminary in-

---

8. There can be no serious dispute but that NBCA is a party in interest. *See* 19 U.S.C. § 1516a(d) (Supp. IV 1980). *See also* 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 24.16[4] at 24–178 (2d ed. 1982).

9. The court notes in passing that in an order filed on this day determining the scope of this court's temporary restraining order of July 7, 1983, NBCA has been ordered to return refund checks to the Customs Service which were in-

advertently issued to NBCA. In a very real sense, then, NBCA is a party enjoined.

10. The amount of duty refunds is business confidential and is the subject of a judicial protective order entered this day. With that figure, the 10% interest rate and the amount of security, the parties will then, of course, be able to compute the court's estimate as to the duration of these proceedings.

junction and motion to alter or amend the judgment are granted;

2. That the order of December 22, 1982, 4 CIT ——, 553 F.Supp. 1060, denying plaintiff's motion for a preliminary injunction is vacated;

3. That the defendants be, and they hereby are, restrained from liquidating any and all unreliquidated entries of the merchandise covered by the determination contested in this action, i.e., Final Results of Administrative Review and Revocation in Part of Antidumping Finding, a notice of which was published on June 15, 1982 in 47 Fed.Reg. 25757–9;

4. That as a condition to the grant of preliminary injunctive relief a $100,000.00 bond or equivalent security be posted by plaintiff with the clerk of the court; and

5. That unless sooner modified or vacated for good cause shown this order shall expire upon the entry of final judgment on the merits in this action.