PPG Industries, Inc., plaintiff *v.* United States, defendant, Vitro Flex, S.A., and Cristales Inastillables de Mexico, S.A., defendant-intervenors

Court No. 86–12–01546

(Decided January 9, 1987)

Memorandum Opinion

*Stewart and Stewart (Terence P. Stewart* on the motion) for the plaintiff.
*Brownstein, Zeidman and Schomer (David R. Amerine* on the motion) for the defendant-intervenors.
*Richard K. Willard,* Assistant Attorney General; *David M. Cohen,* Director, commercial Litigation Branch, Civil Division, Department of Justice *(Platte B. Moring, III* on the motion) for the defendant.

Carman, *Judge:* This Court issued an order on December 22, 1986 granting plaintiff's application for a preliminary injunction. This opinion follows the issuance of that order.

Plaintiff commenced this action pursuant to § 516(a)(2)(A)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(A)(i) (1980 & Supp. 1986) and 28 U.S.C. § 1581(c) (Supp. 1986), by filing a summons and complaint concurrently with an application for a temporary restraining order (TRO) and preliminary injunction. Plaintiff contests certain aspects of the final determination of the International Trade Administration (ITA) in its administrative review of the countervailing duty order covering fabricated automotive glass from Mexico.

On December 11, 1986, the Motion Part Judge, the Honorable Dominick L. DiCarlo, granted plaintiff's request for a TRO thus enjoining the defendant from liquidating all entries of fabricated automotive glass produced by two Mexican manufacturers and exporters, Cristales Inastillables de Mexico, S.A. (Crinamex), and Vitro Flex, S.A., which were entered or withdrawn on or after October 24, 1984 and exported on or before December 31, 1985. The matter was scheduled for a hearing at a time and place to be decided by the Court.

On December 18, 1986, this Court, upon the consent of all parties to this action, extended the TRO for an additional ten days. The hearing was scheduled for December 22, 1986. At the hearing, counsel for the Mexican manufacturers moved to intervene as of right and opposed plaintiff's motion for a preliminary injunction. The defendant United States consented to the issuance of a preliminary injunction. The Court granted the motion to intervene and issued an order enjoining the defendant from liquidating any and all entries covered by the previous request for a TRO and preliminary injunction. Pursuant to Rule 52 of the Rules of this Court, this opinion sets forth the findings of fact and conclusions of law to support the granting of the motion for a preliminary injunction.

DISCUSSION

A preliminary injunction is an extraordinary remedy that must be granted sparingly. It should be granted only upon a clear showing that the movant is entitled to the relief requested. *American Air Parcel Forwarding Co.* v. *United States*, 1 CIT 293, 298, 515 F. Supp. 47, 52 (1981).

When considering an application for a preliminary injunction, the Court must consider four factors: (1) the threat of immediate and irreparable injury; (2) the likelihood of success on the merits; (3) the public interest; and (4) the balance of hardships on all the parties. *Zenith Radio Corp.* v. *United States*, 710 F.2d 806 (Fed. Cir. 1983); *S.J. Stile Assoc. Ltd.* v. *Snyder*, 646 F.2d 522 (CCPA 1981); *Ceramica Regiomontana* v. *United States*, 7 CIT 390, 590 F. Supp. 1260 (1984); *Timken Co.* v. *United States*, 6 CIT 76, 569 F. Supp. 65 (1983); *American Air Parcel*, 1 CIT 293, 515 F. Supp. 47. In analyzing these criteria, the Court applies a "balance of hardship," or sliding scale approach. Essentially, the Court must ascribe to each factor its proper weight:

> While considering the public interest in all cases, the critical factors are the probability of the irreparable injury to the movant should the equitable relief be withheld, and the likelihood of harm to the opposing party if the court were to grant the interlocutory injunction. Although the extraordinary remedy of a preliminary injunction is not available unless the moving party's burden of persuasion is met as to all four factors, the showing of likelihood of success on the merits is in inverse proportion to the severity of the injury the moving party will sustain without injunctive relief, *i.e.*, the greater the hardship the lesser the showing.

*American Air Parcel*, 1 CIT at 299–300, 515 F. Supp. at 53.

The critical question, therefore, is whether denial of the requested relief will expose the applicant to irreparable harm. The Court of Customs and Patent Appeals has interpreted this requirement as follows:

> Only a viable threat of serious harm which cannot be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined. A preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great. A presently existing, actual threat must be shown.

*S. J. Stile*, 646 F.2d at 525 (citations omitted).

Plaintiff contends the liquidation of entries constitutes the irreparable injury necessary to satisfy one of the factors for granting a preliminary injunction. A number of cases have dealt with this precise issue.

In *Zenith*, 710 F.2d 806, the plaintiff commenced an action to challenge the results of an administrative review. The agency's findings had resulted in a reduction of dumping margins so that

zero or minimal dumping duties would be assessed on entries during the review period.

Plaintiff sought a preliminary injunction to suspend the liquidation of the challenged entries. On appeal from the denial of the injunction, the Court of Appeals held that liquidation of entries would constitute irreparable injury sufficient to warrant the granting of injunctive relief pending the outcome of plaintiff's challenge on the merits. 710 F.2d at 810.

The *Zenith* Court was particularly concerned that liquidation would eliminate the only remedy available to the plaintiff for an incorrect review determination. The court reasoned since the statutory scheme contains no provision for reliquidation or the imposition of higher duties should plaintiff later be successful on the merits, once liquidation occurs, judicial review would be unavailing and ineffective. Allowing the liquidation to proceed would be tantamount to denial of the opportunity to challenge administrative determinations. *See id.* at 810–12.

The *Zenith* rationale was followed by this Court in *Timken Co.* v. *United States,* 6 CIT 76, 569 F. Supp. 65. *Timken* involved a motion for rehearing the issuance of a preliminary injunction to prevent the liquidation of entries of tapered roller bearings pending review of the administrative record. Ruling on the basis of *Zenith,* this Court concluded a threat of irreparable injury existed. *Timken,* 6 CIT at 79–80, 569 F. Supp. at 69. In a later decision, this Court stated in the absence of a preliminary injunction, liquidation prior to judicial review renders the controversy moot. *Ceramica,* 7 CIT at 396, 590 F. Supp. at 1265.

Liquidation of the entries would therefore cause plaintiff irreparable injury since it would deprive plaintiff of the opportunity for meaningful judicial review. The Court in reaching this conclusion, however, need not address the defendant-intervenors' contention that *Zenith* and *Timken* do not establish a conclusive presumption of immediate and irreparable injury. Rather, regardless of whether or not such a presumption exists, and this issue is not being addressed, the Court expressly finds that plaintiff has met its burden of demonstrating irreparable harm.

Defendant-intervenors also contend that *Zenith* and *Timken* require an independent showing of actual injury to sustain a finding of irreparable harm. They argue since plaintiff has not in fact suffered such injury and has failed to supply evidence of injury, irreparable harm has not been established.

A fair reading of *Zenith* and *Timken,* however, does not support the contention that a plaintiff must proffer *independent* evidence of actual injury. Although the *Zenith* Court stated that *one* of the factors affecting its decision was the existence of actual injury, the Court made clear that at least one other factor was important to its decision. The second factor relied upon by the *Zenith* Court was the

desire for effective enforcement of the antidumping laws. In passing the Trade Agreements Act of 1979, Congress empowered the then Customs Court to enjoin liquidation of entries pending judicial review. *See* 19 U.S.C. § 1516a(c)(2). The grant of this power was intended in part to afford domestic interested parties an opportunity to obtain effective judicial review of agency determinations. To effectuate this intent, the *Zenith* Court held that liquidation of entries would constitute irreparable injury. Accordingly, our decision places particular emphasis upon this latter factor.

Defendant-intervenors contend plaintiff did not suffer actual injury. We disagree. Although the statistical conclusions set forth by the intervenors suggest the plaintiff's business has improved, the contention plaintiff has not suffered actual injury is conjectural and fails to effectively address the rationale of *Zenith* and *Timken*. Defendant-intervenors are also incorrect to argue increased sales alone indicate improved performance and lack of injury since many other factors influence profitability. Overall performance in turn is often effected by factors such as short-term cyclical changes.

The second factor to be considered in the determination of whether or not to grant a preliminary injunction is the likelihood plaintiff will succeed on the merits. This Court has held that the movant must show some probability of prevailing on the merits:

> [I]t must be considered and balanced with the comparative injuries of the parties, an exercise involving a flexible interplay between the two criteria. Accordingly, although a showing that the moving party will be more severely prejudiced by a denial of the injunction than the opposing party would be by its grant does not remove the need to show some probability of prevailing on the merits, it does lower the standard that must be met. In such circumstances it will ordinarily be sufficient that the movant has raised questions which are "serious, substantial, difficult and doubtful."

*Timken,* 6 CIT at 80, 569 F. Supp. at 70 (citations omitted).

Plaintiff first contends the agency failed to take into account the ruling of this Court in *Cabot Corporation* v. *United States,* 9 CIT 489, 620 F. Supp. 722 (1985), in its investigation of the countervailability of Mexico's natural gas pricing practices. The second issue raised by plaintiff concerns the propriety of the agency's investigation of FICORCA programs and in particular whether or not benefits were targeted to a restricted group of companies. In raising these issues, plaintiff suggests the agency has derogated from the clear mandates of the statute and the decisions construing it. Taken together, the questions posed are difficult, doubtful, substantial, and serious.

The third issue raised by plaintiff concerns the agency's calculation of net benefit bestowed upon exports of fabricated automotive glass from the FOMEX export financing program. Plaintiff contends the ITA's calculations do not reflect the effects of compensat-

ing balances. Defendant intervenors contend at least with respect to the agency's final determination, the rates take account of compensating balances. Defendant intervenors admit a factual issue is raised whether or not the rates used in the original investigation reflected the effect of compensating balances. Considering all the issues raised by plaintiff as a whole, it is clear plaintiff has raised important and difficult questions that merit fuller consideration. Although plaintiff must overcome some serious problems with its position, it is conceivable plaintiff will ultimately succeed on the merits.

The third criterion which must be considered is whether issuance of the preliminary injunction will cause harm to the other interested parties. At the hearing, counsel for the defendant stated the government routinely consents to requests for enjoining the liquidation of entries. He stated while the government takes no position on the merits, the government does not oppose plaintiff's motion.

Defendant-intervenors advert to three parties likely harmed if the injunction is granted. Importers would be injured since they would not have access to monies deposited as estimated duties until the case is decided and the entries are liquidated. The government would be harmed if the amount held as estimated duties was determined to have been erroneous. In accordance with 19 U.S.C. § 1671f, the government must refund the deposit to the extent the deposit exceeds the amount determined to be due *together with interest*. Finally, defendant-intervenors have been harmed since all benefits determined countervailable have been renounced.

At the hearing, defendant-intervenors acknowledged the funds held by the government as estimated duties are earning interest thus offsetting any potential liability of the government. Since the government also does not oppose this motion, we agree with plaintiff that the government apparently will not be harmed if the injunction is granted. It is also therefore unnecessary to require plaintiff to post a bond to cover the amount of damages incurred by the government as a result of the injunction.

While fully cognizant of the potential harm to the importers and the defendant-intervenors if the injunction is granted, we are nevertheless convinced that this potential and thus speculative harm is outweighed by the extent of harm plaintiff will incur if the injunction is denied. To offset this harm, defendant-intervenors seek to require plaintiff to give security for the costs or damages that might be incurred or suffered by the defendant-intervenors as a result of the injunction that directs the government not to liquidate the subject entries. The damages to which the defendant-intervenors allude, however, seem at best conjectural. It is also doubtful that defendant-intervenors are entitled to this remedy under the Rules of this Court. Rule 65(c) requires the giving of security by an applicant seeking injunctive relief for costs and damages as "may be incurred

or suffered by any party who is found to have been wrongfully enjoined or restrained." Since the injunctive order in this case runs to the defendant United States, and not the defendant-intervenors, and since the damages asserted by the defendant-intervenors appear speculative, the Court will not require the posting of security.

The last factor to be considered is whether the public interest will be served by the issuance of injunctive relief. On this issue, the decision of this Court in *Ceramica* is helpful: "there can be no doubt that [the public interest] is best served by ensuring that the ITA complies with the law, and interprets and applies our international trade statutes uniformly and fairly." 7 CIT at 397, 590 F. Supp. at 1265.

In this case, the public interest would be served best by granting the injunction. Plaintiff has raised substantial questions bearing upon the propriety of the agency's actions. An injunction will preserve plaintiff's rights until the merits and the issue of compliance with the law are fully considered. It will provide interim relief until those doubts that have been raised are eliminated. Any inconveniences that arise as a result of granting the injunction are outweighed by the irreparable harm and injury plaintiff will incur if the entries are liquidated.

### CONCLUSION

Plaintiff has put forth persuasive arguments to support its motion for a preliminary injunction. In considering and balancing the four factors necessary to support a preliminary injunction, we hold that plaintiff is entitled to the relief requested.