**Slip Op. 02-66**

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

ALTX, INC., AMERICAN EXTRUDED
PRODUCTS, CORP., DMV STAINLESS
USA, INC., SALEM TUBE, INC.,
SANDVIK STEEL CO., PENNSYLVANIA
EXTRUDED TUBE COMPANY, and
UNITED STEEL WORKERS OF
AMERICA, AFL-CIO/CLC,

Plaintiffs,

v.

THE UNITED STATES, and THE
UNITED STATES INTERNATIONAL
TRADE COMMISSION,

Defendants,

and

SUMITOMO METAL INDUSTRIES,
NIPPON STEEL CORPORATION,
KAWASAKI STEEL CORPORATION,
NKK CORPORATION, KOBE STEEL
LTD., and SANYO SPECIAL STEEL
COMPANY,

Defendant-Intervenors.

_____

Court No. 00-09-00477

[Motion for preliminary injunction denied.]

Dated:  July 12, 2002

Collier Shannon Scott, PLLC (David A. Hartquist, Jeffrey S. Beckington, and R. Alan Luberda) for plaintiffs.

Lyn M. Schlitt, General Counsel, Marc A. Bernstein, Assistant General Counsel, United

States International Trade Commission (Rhonda M. Hughes), for defendants.

      Wilmer, Cutler & Pickering (John D. Greenwald, Robert C. Cassidy, Jr., Leonard Shambon, Jason Kearns and Lynn M. Fischer) for defendant-intervenors.

## OPINION

**RESTANI, Judge:**

      Plaintiffs Altx, Inc., American Extruded Products Corp., DMV Stainless USA, Inc., Salem Tube, Inc., Sandvik Steel Co., Pennsylvania Extruded Tube Company, and United Steelworkers of America, AFL-CIO/CLC (collectively, "Altx") move this court for the entry of a preliminary injunction that: (1) enjoins the U.S. Customs Service ("Customs") from liquidating entries of circular seamless stainless steel hollow products ("CSSSHP") from Japan which have been entered or withdrawn from warehouse on or after May 1, 2000 – the date of the preliminary determination of sales at less than fair value, see Circular Seamless Stainless Steel Hollow Products from Japan, 65 Fed. Reg. 25,305 (May 1, 2000) – and that remain unliquidated as of the date of the court's issuance of the requested injunction; and (2) orders the Department of Commerce ("Commerce" or "the Department") to issue instructions to Customs suspending liquidation on all such entries or withdrawals from warehouse, pending the final resolution of this action and any appeals thereto. See CIT Rule 65.

### Background

      On August 30, 2000, the United States International Trade Commission ("ITC" or "the Commission") published its final determination by a 4-2 vote that the domestic CSSSHP industry was neither materially injured nor threatened with material injury by reason of dumped imports

of CSSSHP from Japan.  See Circular Seamless Stainless Steel Hollow Products from Japan, 65

Fed. Reg. 52,784 (Aug 30, 2000).   Accordingly, Customs ceased collecting duty deposits on

entries of CSSSHP from Japan and refunded all deposits that had been collected between the date

of publication of Commerce's preliminary determination (i.e., May 1, 2000) and the publication

of the Commission's final determination.

On September 19, 2001, the court remanded the determination to the Commission to

reconsider its findings with respect to the volume of imports, the effect of subject imports on

domestic prices, and impact of imports on the domestic industry, and to reevaluate its

determinations regarding present material injury and threat of material injury.  See Altx, Inc. v.

United States, 167 F. Supp. 2d 1353 (Ct. Int'l Trade 2001).  On December 3, 2001, the

Commission returned a remand determination reflecting a 3-3 affirmative determination based on

the original minority opinion.

**Discussion**

Pursuant to 19 U.S.C. § 1516a(c)(2), the court has the authority to render preliminary

injunctive relief "upon a request by an interested party for such relief and a proper showing that

the requested relief should be granted under the circumstances."  A preliminary injunction,

however, is an extraordinary remedy which may issue only upon a clear showing by the moving

party that they are entitled to such relief.  See Trent Tube Div., Crucible Materials Corp. v.

United States, 744 F. Supp. 1177 (1990).  "Only a viable threat of serious harm which cannot be

undone authorizes exercise of a court's equitable power to enjoin before the merits are fully

determined.  A preliminary injunction will not issue simply to prevent a mere possibility of

injury, even where prospective injury is great." S. J. Stile Assocs. v. Snyder, 646 F.2d 522, 525 (1981) (citation omitted). Plaintiffs must establish the following four factors in order to obtain a preliminary injunction: (1) the threat of immediate irreparable harm; (2) the likelihood of success on the merits; (3) the public interest would be better served by the requested relief; and (4) the balance of hardship on all the parties favors plaintiffs. See Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983).

**A. The ITC's Affirmative Decision does not Establish Irreparable Harm**

Altx relies on Zenith for the proposition that because, following initial remand, the Commission has rendered an affirmative determination of injury under the antidumping laws, the court must find irreparable harm to the domestic industry. Altx's reliance on Zenith is misplaced. The Federal Circuit in Zenith held that during an appeal of an administrative review of an antidumping order, liquidation of entries constituted irreparable harm. The Federal Circuit reasoned that liquidation of entries was of particular concern in the case of an administrative review because liquidation under such circumstances "would eliminate the only remedy available to [the petitioner] for an incorrect review determination." Zenith, 710 F.2d at 810. Clearly, Zenith does not apply here because the instant case involves an appeal of injury determination in an investigation, rather than an administrative review. See also Sandoz Chemicals Corp. v. United States, 17 CIT 1061, 1063 (1993) ("Unlike an annual review, a negative injury determination affects liquidation of all future entries, not just those made within a specific time period. In such a situation, liquidation does not substantially curtail available judicial

4

remedies.").

Altx attempts to distinguish the holding in Standoz on the ground that it involved an appeal from a negative injury determination pursuant an investigation. In Trent Tube, however, the court extended the Sandoz holding to an investigation where, as here, the Commission had made an initial negative injury determination, and subsequently made an affirmative injury determination on remand. The court denied the motion for a preliminary injunction, reasoning that liquidation of entries is not per se irreparable harm in the context of determinations in investigations. Trent Tube, 744 F. Supp. at 1177 ("Plaintiffs must show additional evidence to prevail on the motion for preliminary injunction."). The court ultimately found that liquidated entries, supplemented by speculative evidence of harm, was insufficient to establish that denial of an injunction would cause irreparable harm. Trent Tube, 744 F. Supp. at 1179. Thus, to support a finding of irreparable harm, Altx must present additional evidence establishing irreparable injury.

**B. Evidence of Lost CDO Revenue does not Establish Irreparable Harm**

Altx argues that the loss of duty revenue under the Continued Dumping and Subsidy Offset Act ("CDO") constitutes irreparable harm. See 19 U.S.C. 1675c (2001); 19 C.F.R. § 159.61. Under the CDO, assessed duties received by Customs during the fiscal year will be disbursed to affected domestic producers that have incurred qualifying expenditures subsequent to the issuance of an antidumping or countervailing duty order. See 19 C.F.R.§ 159.61(a). Under the CDO, all duties collected by Customs are placed in a Special Account to be distributed

to "affected producers" with "qualifying expenditures." Id. at § 159.64(b). If the Special

Account figure is larger than the qualifying expenditures, the domestic producers will be paid for

their full claim of qualified expenditures. Id. at § 159.61(c). If the Special Accout is less than

the qualified expenditures, however, the domestic industries will be paid on a pro rata basis. Id.

Thus, in order to establish irreparable injury, Altx has the burden of showing that the

affected producers' qualified expenditures will be greater than the amount that will be distributed

from the Special Account. Altx has not met this burden. First, Exhibit 1 ("Continued Dumping

and Subsidy Offset") indicates that Sandvik Steel incurred qualifying expenditures of

$14,790,198 in calendar year 2001 against which domestic industry might claim disbursement

under the CDO. Qualifying expenditures, however, "must be incurred after the issuance, and

prior to the termination, of the antidumping duty order . . . ." 19 C.F.R. 159.61(c). Altx fails to

show that evidence of qualifying expenditures for the year 2001 will correspond to qualifying

expenditures following the antidumping order. Furthermore, in Attachment 8 ("U.S. Imports of

Circular Seamless Stainless Steel Hollow Products from Japan"), Altx provides evidence of

volume and value of imports for the period from August 2001 to February 2002. This serves

merely as an indicator of revenues that Customs could collect for the Special Account if there

was a suspension of liquidated entries. This does not indicate the portion of that revenue the

affected producers would receive. At a minimum, Altx must produce affidavits or other evidence

showing, with more specificity, expected lost antidumping duties on liquidated entries, the

amount of antidumping duties to be raised in the event of the issuance of an antidumping duty

order, and the amount of qualified expenditures to be expected following an order. Further,

6

because the effects of any order will continue in the future, Altx must establish that there is a likelihood that it will suffer economically because of the liquidation of particular entries. Without such specific showings, it is left to speculation whether liquidating entries will have any impact on the domestic industry.

Although the court has not sustained the remand affirmative injury finding, but has again remanded the case, because Altx failed to meet the burden of proving irreparable harm, the court need not reach its arguments with respect to the other three factors assessed in determining whether to grant an preliminary injunction. See Trent Tube, 744 F. Supp. 1177 ("If any one of the requisite factors has not been established by plaintiffs, the motion for a preliminary injunction must be denied."). The court notes, however, that it cannot predict at this time whether the final remand injury determination will be affirmative or negative. Thus, further attempts to show irreparable harm are unlikely to satisfy Altx's overall burden under the four-part test.

Accordingly, Altx's motion for a preliminary injunction is DENIED.


_____

Judge of the United States

Court of International Trade




Dated:  New York, New York


This \_\_\_ day of July, 2002.