SLIP OP. 05-11

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: RICHARD K. EATON, JUDGE

_____

|  |  |  |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, INDUSTRIAL DIVISION OF THE COMMUNICATION WORKERS OF AMERICA (IUE-CWA), AND FIVE RIVERS ELECTRONICS INNOVATION, LLC, | : | |
| PLAINTIFFS, | : | |
| V. | : | |
| UNITED STATES, | : | |
| DEFENDANT, | : | CONSOL. COURT NO. 04-00270 |
| AND | : | |
| KONKA GROUP CO., PHILIPS ELECTRONICS NORTH AMERICA CORP., PHILIPS CONSUMER ELECTRONICS CO OF SUZHOU LTD, WAL-MART STORES, INC., PRIMA TECHNOLOGY, INC., XIAMEN OVERSEAS CHINESE ELECTRONIC CO., SICHUAN CHANGHONG ELECTRIC CO., TCL CORP., AND APEX DIGITAL, INC., | : | |
| DEF.-INTERVENORS. | : | |

_____

[Plaintiffs' motion for preliminary injunction granted]

Dated: January 27, 2005

*Collier, Shannon, Scott, PLLC* (*Mary Tuck Staley*), for Plaintiffs International Brotherhood of Electrical Workers, Industrial Division of the Communication Workers of America (IUE-CWA), and Five Rivers Electronics Innovation, LLC.

*Peter D. Keisler*, Assistant Attorney General, Civil Division, United States Department of Justice; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Michael David Panzera*), for Defendant United States.

*White & Case, LLP* (*Adams C. Lee*), for Defendant-Intervenor Konka Group Co.

*Hunton & Williams, LLP* (*Richard P. Ferrin* and *William Silverman*)*,* for Defendant-Intervenors Philips Electronics North America Corp. and Philips Consumer Electronics Co. of Suzhou Ltd.

*McDermott, Will & Emery, LLC* (*Raymond Paul Paretzky*), for Defendant-Intervenor TCL Corp.

*Sonnenschein Nath & Rosenthal* (*Philip Steven Gallas*), for Defendant-Intervenor Wal-Mart Stores, Inc.

*Willkie, Farr & Gallagher, LLP* (*Daniel Lewis Porter*), for Defendant-Intervenors Prima Technology, Inc. and Xiamen Overseas Chinese Electronic Co.

*Wiley, Rein & Fielding, LLP* (*Charles Owen Verrill, Jr.*), for Defendant-Intervenor Sichuan Changhong Electric Co.

*O'Melveny & Myers, LLP* (*Veronique Lanthier*), for Defendant-Intervenor Apex Digital, Inc.


MEMORANDUM OPINION

EATON, *Judge*: Before the court is the motion for a preliminary injunction of the International Brotherhood of Electrical Workers, the Industrial Division of the Communication Workers of America, and Five Rivers Electronics Innovations, LLC ("Plaintiffs") seeking to enjoin liquidation of certain entries of color television receivers from the People's Republic of China (the "Subject Merchandise") entered within the 90-day period preceding the preliminary determination in this matter. *See* Certain Color Television Receivers From the People's Republic of China, 68 Fed. Reg. 66,800, 66,808–10 (ITA Nov. 28, 2003) (prelim. determination) ("Preliminary Critical Circumstances Determination"). Should the motion be granted, liquidation

would be enjoined pending a final decision on the merits in the underlying antidumping action.

Defendant, the United States, on behalf of the Department of Commerce ("Commerce" or the

"Department"), does not object to the issuance of a preliminary injunction. Defendant-

Intervenors, Sichuan Changhong Electric Co, Ltd. ("Sichuan"), Wal-Mart Stores, Inc. ("Wal-

Mart"), and Apex Digital, Inc. ("Apex"), however, do object to the issuance of a preliminary

injunction, and urge denial of the motion.[1] The court has the authority to grant the requested

relief. *See* 28 U.S.C. § 1585 (2000); 28 U.S.C. § 2643(c)(1) (2000); 28 U.S.C. §1651(a)(2000).[2]

For the reasons set forth below, the court grants Plaintiffs' motion.

---

[1]    The other Defendant-Intervenors in this action, Konka Group Co., Philips Electronics North America Corp., Philips Consumer Electronics Co. of Suzhou Ltd., TCL Corp., Prima Technology, Inc., and Xiamen Overseas Chinese Electronic Co., take no position with respect to Plaintiffs' motion.

[2]    Title 19 U.S.C. § 1516a(c)(2) grants this court the power to enjoin liquidation of entries during litigation of antidumping and countervailing duty determinations.

> In the case of a determination described in paragraph (2) of subsection (a) of this section by the Secretary, the administering authority, or the Commission, the United States Court of International Trade may enjoin the liquidation of some or all entries of merchandise covered by a determination of the Secretary, the administering authority, or the Commission, upon a request by an interested party for such relief and a proper showing that the requested relief should be granted under the circumstances.

In addition, this court has broad injunctive power, as it "possesses all the powers in law and equity of, or as conferred by statute upon, a district court of the United States. . . ." 28 U.S.C. § 1585; *Borlem S.A.-Empreedimentos Industrias v. United States*, 913 F.2d 933, 937 (Fed. Cir. 1990) ("[T]he legislative history of 28 U.S.C. § 1585 provides the Court of International Trade 'with all the necessary remedial powers in law and equity possessed by other federal courts established under Article III of the Constitution.'"). Moreover, 28 U.S.C. § 2643(c)(1) authorizes the Court of International Trade to "order any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition."

BACKGROUND

On May 29, 2003, following a petition by the Plaintiffs, Commerce conducted an

antidumping investigation of color television receivers from the People's Republic of China

("P.R.C.").[3] As part of that investigation, Commerce examined Plaintiffs' claim for a critical

circumstances determination,[4] and preliminarily concluded that critical circumstances existed.

*See* Preliminary Affirmative Critical Circumstances Determination, 68 Fed. Reg. at 66,808–09.

On final determination, however, Commerce found that the facts did not warrant a finding of

critical circumstances. *See* Certain Color Television Receivers from the P.R.C., 69 Fed. Reg.

20,594, 20,596 (ITA April 16, 2004) (final determination) ("Final Negative Critical

Circumstances Determination"). In the underlying action, among other things,[5] Plaintiffs appeal

the Final Negative Critical Circumstances Determination to this court. Should Plaintiffs prevail

---

[3]     *See* Certain Color Television Receivers From Malaysia and the P.R.C., 68 Fed. Reg. 32,013 (ITA May 29, 2003) (notice of initiation).

[4]     The critical circumstances statute was enacted to serve as a deterrent to "exporters whose merchandise is subject to an investigation from circumventing the intent of the law by increasing their exports to the United States during the period between initiation of an investigation and a preliminary determination by the Authority." H.R. REP. NO. 96-317 at 63 (1979); *see Coal. for the Pres. of Am. Brake Drum & Rotor Aftermarket Mfrs. v. United States*, 23 CIT 88, 112 n.38, 44 F. Supp. 2d 229, 252 n.38 (1999) (quoting S. REP. NO.103-412 at 38 (1994) "This provision is 'designed to address situations where imports have surged as a result of the initiation of an antidumping or countervailing duty investigation, as exporters and importers seek to increase shipments of the merchandise subject to investigation into the importing country before an antidumping or countervailing duty order is imposed.'").

[5]     Although the final determination with respect to critical circumstances was negative, the final determination with respect to dumping was affirmative. *See* Final Negative Critical Circumstances Determination, 69 Fed. Reg. at 20,594. In addition to appealing the critical circumstances determination, Plaintiffs appeal Commerce's determination with respect to the calculation of the dumping margins, an aspect of the antidumping final determination not germane to the instant motion. *See id.*, *see also* Certain Color Television Receivers from the P.R.C., 69 Fed. Reg. 35,583 (ITA June 25, 2004) (am. final determination).

in their appeal with respect to critical circumstances, any unliquidated Subject Merchandise

entered within 90 days prior to the Preliminary Affirmative Critical Circumstances

Determination would be liquidated with the ultimately determined antidumping duties. *See* 19

C.F.R. § 351.206(a) (2000); *see also* 19 U.S.C. § 1673d(c)(4)(A)–(B) (2000).[6]


## DISCUSSION

Injunctive relief is an "extraordinary remedy" that is to be granted sparingly. *Weinberger*

*v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); *FMC Corp. v. United States*, 3 F.3d 424, 427

(Fed. Cir. 1993) (not reported in the Federal Supplement); *PPG Indus., Inc. v. United States*, 11

---

[6]     This provision states:

> If the determination of the administering authority under [19 U.S.C. § 1673d(a)(3)] is affirmative, then the administering authority shall—
>
> (A) in cases where the preliminary determinations by the administering authority under [19 U.S.C. § 1673b(b), relating to dumping, and (e)(1), relating to critical circumstances] were both affirmative, continue the retroactive suspension of liquidation and the posting of a cash deposit, bond, or other security previously ordered under [19 U.S.C.§ 1673b(e)(2)];
>
> (B) in cases where the preliminary determination by the administering authority under [19 U.S.C. § 1673b(b)] was affirmative, but the preliminary determination under [19 U.S.C. § 1673b(e)(1)] was negative, shall modify any suspension of liquidation and security requirement previously ordered under [19 U.S.C. § 1673b(d)] to apply to unliquidated entries of merchandise entered, or withdrawn from warehouse, for consumption on or after the date which is 90 days before the date on which suspension of liquidation was first ordered . . . .

19 U.S.C. § 1673d(c)(4)(A)–(B) (2000).

CIT 5, 6 (1987) (citing *Am. Air Parcel Forwarding Co. v. United States*, 1 CIT 293, 298, 515 F.

Supp. 47, 52 (1981)). In order to prevail on a motion for a preliminary injunction, Plaintiffs must

show (1) that they will be immediately and irreparably injured; (2) that there is a likelihood of

success on the merits; (3) that the balance of hardship on all the parties favors Plaintiffs; and (4)

that the public interest would be better served by the relief requested. *Am. Spring Wire Corp. v.*

*United States*, 7 CIT 2, 3, 578 F. Supp. 1405, 1406 (1984).


A.      *Irreparable Injury*

This motion presents the question of the applicability of the holding in *Zenith Radio*

*Corp. v. United States*, 710 F.2d 806 (Fed. Cir. 1983), to the Final Negative Critical

Circumstances Determination. Under *Zenith*, in the context of an annual review,[7] irreparable

injury to domestic producers is presumed to result from the prospect of liquidation of the entries

at issue, since "liquidation would indeed eliminate the only remedy available . . . ." *Id.* at 810.

Plaintiffs argue that the facts of this case require the application of *Zenith*. For their part,

Defendant-Intervenors insist that the facts more closely resemble those present in *American*

---

[7]     Several changes were made to the provisions for administrative reviews pursuant to the amendments made by the Uruguay Round Agreements Act in 1994. *See* Eugene T. Rossides & Alexandra Maravel United States Import Trade Law, 41-12 (vol. 2 1997) (citing *Krupp Stahl A.G. v. United States*, 15 CIT 169 (1991) (not reported in the Federal Supplement), *Interredec, Inc. v. United States*, 11 CIT 45, 652 F. Supp. 1550 (1987)). Section 751 of the Tariff Act of 1930 (19 U.S.C. § 1675(a)) was amended to conform to those changes, and now provides for review, *upon request*, of (1) the dumping duty or net countervailable subsidy or (2) compliance with a suspension agreement (and the net countervailable subsidy or margin) at least once during each 12-month cycle beginning on the anniversary of the date of the issuance or a notice of suspension pursuant to an agreement. Prior to these changes, section 751 contained automatic review provisions. Thus, the administrative review in *Zenith* was automatic in nature. *See id*; Title 19 U.S.C. § 1675(a) (2000).

*Spring Wire* and, therefore, irreparable injury cannot be presumed, but must be actually demonstrated.

According to Plaintiffs, absent the imposition of a preliminary injunction, they will suffer irreparable injury, because the Subject Merchandise entered during the 90-day period prior to the Preliminary Determination will be subject to liquidation. Should such liquidation take place, and should Plaintiffs prevail on the merits with respect to their critical circumstances claim, they insist that liquidation would eliminate the only remedy available to them, and thus they will be irreparably harmed. Plaintiffs argue that their remedy would be eliminated because (1) the entries would be liquidated free of any antidumping duty, and (2) there is no provision in law for reliquidation of these entries with the finally-determined antidumping duty. *See Zenith*, 710 F.2d at 810 ("Once liquidation occurs, a subsequent decision by the trial court on the merits of [plaintiff's] challenge can have no effect on the dumping duties assessed on entries of television receivers during the . . . review period."). Plaintiffs state:

> Failure to enjoin liquidation of the entries at issue in the negative critical circumstances determination would result in those entries being liquidated by the Bureau of Customs and Border Protection without the assessment of any antidumping duties. If entries from Changhong are liquidated prior to a decision by this Court on the merits of this appeal, plaintiffs will suffer irreparable harm . . . . Plaintiffs will be irreparably harmed because if the entries are liquidated without duties, the injury that the domestic industry experienced as a result of those imports during the 90 days prior to the Preliminary Affirmative Critical Circumstances Determination will not be offset. Moreover, if liquidation of the entries subject to this action is not enjoined, the parties' and the Court's efforts, and any order the Court issues, effectively may be nullified, and plaintiffs will be without recourse or remedy with respect to the entries subject to this action should the Court eventually rule in its favor on the merits of this action.

Pls.' Am. Consent Mot. at 3 (internal citation omitted).

As such, Plaintiffs claim that their situation is the same as that of the plaintiff in *Zenith*. In *Zenith*, Commerce conducted an annual administrative review of an antidumping duty order on television receivers from Japan. During the review, Commerce found *de minimis* dumping margins, and directed liquidation of entries made during the review without antidumping duties. Zenith challenged Commerce's administrative review determination in this Court and moved for a preliminary injunction. After its motion was denied, Zenith appealed to the United States Court of Appeals for the Federal Circuit, which reversed and held that Zenith would suffer irreparable injury if liquidation of the entries were not enjoined:

> [L]iquidation would indeed eliminate the only remedy available to Zenith for an incorrect review determination by depriving the trial court of the ability to assess dumping duties on Zenith's competitors in accordance with a correct margin on entries in the '79-'80 review period. The result of liquidating the '79-'80 entries would not be economic only. In this case, Zenith's statutory right to obtain judicial review of the determination would be without meaning for the only entries permanently affected by that determination.

*Zenith*, 710 F.2d at 810.

*Zenith* has regularly been followed by this Court. *See, e.g., SKF USA Inc. v. United States*, 28 CIT ___, 316 F. Supp. 2d 1322, 1327 (2004) (citing *Zenith*, 710 F.2d at 809–10); *OKI Elec. Indus. Co. v. United States*, 11 CIT 624, 632, 669 F. Supp. 480, 486 (1987) (finding liquidation and automatic assessment to cause irreparable harm, not only because of economic loss, but also by deprivation of meaningful judicial review); and *Ugine-Savoie Imphy v. United States*, 24 CIT 1246, 1250, 121 F. Supp. 2d 684, 688 (2000) (finding irreparable harm in a sunset

review appeal).

For their part, Defendant-Intervenors claim that the facts of this case more closely resemble those of *American Spring Wire*. *American Spring Wire* involved an application by domestic manufacturers for a preliminary injunction following a final negative antidumping determination. The domestic manufacturers produced no affidavits or other meaningful evidence demonstrating actual irreparable injury. Rather, they relied on the *Zenith* holding of the year before. The court in *American Spring Wire*, however, distinguished *Zenith* on the grounds that *Zenith* involved judicial scrutiny of an annual review, not of a final determination. The court found it important that administrative reviews focus on discrete periods of time, and affect finite numbers of entries. Thus, the unique nature of an administrative review required the holding in *Zenith*:

> [I]f a court [examining an administrative review determination] does not enjoin liquidation of entries pending resolution of challenges to the section 751 [annual] review [(19 U.S.C. § 1675(a))] then under consideration, the practical effect will be to moot the controversy and, at the same time, deprive appellants of their right to judicial review of the agency's section 751 [annual] review determination.

*Am. Spring Wire*, 7 CIT at 5, 578 F. Supp. at 1407. However, the *American Spring Wire* court found that the facts before it were different from those in *Zenith*:

> [t]he unique aspect of section 751 [annual] administrative reviews—their capacity for eluding judicial scrutiny because of their periodic nature—is simply not present here. This action centers on final negative injury determinations under 19 U.S.C. §§ 1671d and 1673d (1982). Those determinations, unlike their section 751 counterpart, are not transitory. They will, as a practical matter, extend *in futuro*, unless upset by an intervening judicial decision. And should this court ultimately reverse the

> Commission's negative injury determinations, antidumping and countervailing duties can still be assessed at that time on all unliquidated as well as future entries pursuant to an affirmative injury determination. Thus, unlike in the section 751 [annual] review context, plaintiffs will unquestionably have meaningful judicial review regardless of whether an injunction now issues.

*Id.*

Following *American Spring Wire*, this Court has limited *Zenith* to its facts, and required an independent showing of the irreparable harm when a preliminary injunction against liquidation is sought in litigation arising from a final antidumping or countervailing duty determination. The Court has reached this result regardless of whether the determination is affirmative or negative. For example, in *Altx, Inc. v. United States*, 26 CIT 735, 211 F. Supp. 2d 1378 (2002), the court denied an injunction sought during litigation of an International Trade Commission ("ITC") affirmative injury determination on the grounds that the moving party would not suffer irreparable harm should the requested injunction be denied. "*Zenith* does not apply here because the instant case involves an appeal of [an] injury determination in an investigation, rather than an administrative review." *Id*. at 737, 211 F. Supp. 2d at 1380. *See Bomont Indus. v. United States*, 10 CIT 431, 435, 638 F. Supp. 1334, 1338 (1986) (declining to enjoin liquidation in an action contesting a final determination because the applicant failed to "prove irreparable injury along with the other requirements for such extraordinary relief"); *accord*, *Dupont Teijin Films USA v. United States*, 27 CIT __, slip op. 03-157, at 4 (Dec. 4, 2003) (not reported in the Federal Supplement) (denying an injunction request made during litigation of an affirmative less-than-fair-value ("LTFV") determination on the same grounds; "the court has repeatedly held that liquidation of entries alone does not constitute irreparable

harm" even in the context of a negative LTFV determination where the Department reversed

itself on remand); *Altx*, 26 CIT at 737, 211 F. Supp. 2d at 1381.  In *Sandoz Chems. Corp. v.*

*United States*, 17 CIT 1061, 1061 (1993) (not reported in the Federal Supplement), the court

declined to enjoin the liquidation of entries of sulfur dyes pending resolution of a judicial

challenge to a negative final injury determination, because the effects of the ITC's determination

controlled liquidation of all future entries, and not just those of a discrete time period.  The court

explained the difference between an administrative review and an affirmative or negative injury

determination:

> An administrative review governs liquidation of entries made
> during a discrete time period and does not necessarily control
> liquidation of all future entries.  Because the statute makes no
> provision for reliquidation after a successful judicial challenge,
> judicial review loses the greatest part of its effect once liquidation
> of the entries at issue occurs.  If liquidation is enjoined pending
> judicial resolution of a dispute, the statute provides for liquidation
> in accordance with the final court decision . . . . Unlike an annual
> review, a negative injury determination affects liquidation of all
> future entries, not just those made within a specific time period.  In
> such a situation, liquidation does not substantially curtail available
> judicial remedies. . . . "Negative injury determinations . . . will, as
> a practical matter, extend *in futuro*, unless upset by an intervening
> judicial decision.  And should this court ultimately reverse the
> Commission's negative injury determinations, antidumping and
> countervailing duties can still be assessed at that time on all
> unliquidated as well as future entries pursuant to an affirmative
> injury determination."

*Id.* at 1063 (internal citations omitted).

The court finds the facts of the instant case to be distinguishable from the facts of

*American Spring Wire*, and to more closely resemble those of *Zenith*.  First, the critical

circumstances determination only affects entries made during a discreet period, i.e., the 90-day

period prior to the Preliminary Affirmative Critical Circumstances Determination, and has no effect *in futuro*. Second, if an injunction is not granted, and the entries made during the 90-day period are liquidated, then those entries will elude judicial review because the entries will have been liquidated without the ultimately-decided antidumping duties. Thus, absent an injunction, should entries of the Subject Merchandise be liquidated without the application of the finally-determined antidumping duties, Plaintiffs would lose the only remedy available to them should they ultimately prevail on the issue of critical circumstances. Therefore, in accordance with *Zenith*, Plaintiffs have established that, absent an injunction, they will be irreparably injured.

B.        *Likelihood of Success on the Merits*

Although *Zenith* compels an affirmative finding with respect to irreparable harm, the United States Court of Appeals for the Federal Circuit has made clear that irreparable injury alone is not dispositive of the decision to grant an injunction. *See FMC Corp.*, 3 F.3d at 430 (stating that "[n]owhere in *Zenith* does it suggest that the harm suffered by FMC entitles FMC to an injunction absent a showing of likelihood of success on the merits."). Still, while it remains the movant's burden to demonstrate the likelihood that it will prevail on the merits of its case, the magnitude of the demonstrated harm can lessen that burden. *See Timken Co. v. United States*, 6 CIT 76, 569 F. Supp. 65, (1983). The Court explained:

> [Although] a showing that the moving party will be more severely prejudiced by a denial of the injunction than the opposing party would be by its grant does not remove the need to show some probability of prevailing on the merits, it does lower the standard that must be met. In such a circumstance it will ordinarily be sufficient that the movant has raised questions which are "serious, substantial, difficult and doubtful."

*Id.* at 80, 569 F. Supp. at 70 (internal citation omitted). As has been demonstrated, Plaintiffs

have made a strong showing with respect to irreparable injury. Thus, the requirement that

Plaintiffs demonstrate a likelihood of success on the merits will be satisfied by raising "'serious,

substantial, difficult and doubtful' questions that are the proper subject of litigation" in cases

"[w]here it is clear that the moving party will suffer substantially greater harm by the denial of

the preliminary injunction than the non-moving party would by its grant . . . ." *Ugine-Savoie*

*Imphy*, 24 CIT at 1251, 121 F. Supp. 2d at 689 (quoting *PPG Indus., Inc.*, 11 CIT at 8).


Here, Plaintiffs claim that they have satisfied this standard by disputing the Department's

use of corrected information. Plaintiffs explain that:

> After correction of clerical errors, the Department found that
> Changhong had a margin that exceeded 25%, thereby meeting the
> history of dumping criterion. Stated differently, although the
> Department analyzed the volume of imports differently, the actual
> import data were not materially different between the preliminary
> and final determinations. Again, the only factual difference
> between the preliminary and final determination was the size of the
> dumping margins. Yet, when it issued its amended determination
> to correct for clerical errors, the Department did not address the
> significance of this change in light of the critical circumstances
> finding. Given the importance of the size of the margin in its
> preliminary affirmative finding of critical circumstances, the
> Department should have reevaluated its final negative critical
> circumstances finding in light of these new margin calculations.
> The Department's failure to undertake this analysis resulted in a
> determination that was not supported by substantial evidence and
> was not in accordance with law. This significant, unaddressed
> change, could have resulted in an affirmative finding of critical
> circumstances.

Pls.' Mem. in Resp. to the Court's Order at 4. In other words, Plaintiffs claim that adjustments

made to correct clerical errors should have been made, not only to the final determination, but

also to the Final Negative Critical Circumstances Determination.

Defendant-Intervenors dispute Plaintiffs' argument, claiming that "Commerce did not base its final negative critical circumstances determination on Changhong's margin, and the change in the margin due to clerical error correction is irrelevant to Commerce's negative finding." Wal-Mart's Opp'n to Pls.' Am. Consent Mot. for Prelim. Inj. ("Wal-Mart's Opp'n") at 8.

While it is clear that there is disagreement as to the validity of Plaintiffs' argument, it is equally clear that they raise a substantial question that goes to the heart of Plaintiffs' critical circumstances claim. Thus, Plaintiffs have raised sufficiently serious and difficult questions regarding the validity of Commerce's Final Negative Critical Circumstances Determination to satisfy the likelihood of success on the merits requirement.

C.     *The Balance of Hardships*

Before granting a preliminary injunction, the court must also "determine which party will suffer the greatest adverse effects as a result of the grant or denial of the preliminary injunction" in order to determine the balance of hardships. *Ugine-Savoie Imphy*, 24 CIT at 1250, 121 F. Supp. 2d at 688. Plaintiffs have already demonstrated substantial hardship by their showing of the irreparable harm that would result absent an injunction. *See* discussion *supra,* at 6–12; *see also Timken*, 6 CIT at 82, 569 F. Supp. at 71 (holding that "hardship" to plaintiff is the "complete

loss of its right to judicial review").[8]

Defendant-Intervenors argue that Plaintiffs' claim of potential hardship falls short of tipping the balance of hardships in favor of Plaintiffs. *See* Sichuan's Opp'n to Pls.' Mot. for Prelim. Inj. at 3; Wal-Mart's Opp'n at 11.

Defendant-Intervenors assert that

> Plaintiffs' claim of "great hardship" is unfounded. . . . Further, plaintiffs' claim that an injunction would preserve the <u>status quo</u> is incorrect. The status quo is that the entries are eligible for liquidation. An injunction would deny liquidation of the entries, thus imposing a hardship on importers such as Wal-Mart by creating a disruptive open-ended contingency that would remain on the importers' books until the Court issues its final decision in this action and any appeals from that decision are resolved. *See Elkem*,[9] 135 F. Supp. 2d at 1335-36 (discussing the commercial uncertainty resulting from suspension of liquidation).

Wal-Mart's Opp'n at 11.

---

[8] In consenting to this motion, Defendant, the United States, says "if [Plaintiffs] were to prevail upon the merits [of this case], [Plaintiffs] would not have a remedy through either Commerce or Customs administrative proceedings to compensate for the harm caused by the absence of an injunction." United States' Mem. in Resp. to the Court's Oct. 25, 2004 Order at 5.

[9] Defendant-Intervenor's reliance on *Elkem* to show that Wal-Mart and other importers will suffer a hardship that outweighs Plaintiffs' hardship is misplaced. *Elkem* concerned an application for a preliminary injunction in the context of the reconsideration of a final affirmative antidumping determination. Following the *American Spring Wire* line of cases, *Elkem* held that "the failure . . . to [demonstrate] irreparable harm significantly raises the burden imposed on [p]laintiff to prove a likelihood of success on the merits." *Elkem Metals Co. v. United States*, 25 CIT 186, 196, 135 F. Supp. 2d 1324, 1334–35 (2001). Here, the burden imposed on Plaintiffs to prove a likelihood of success on the merits is less because, in accordance with *Zenith*, irreparable harm is presumed.

The *Timken* case is instructive in the consideration of these claims. Like Defendant-Intervenors in this case, the *Timken* defendant-intervenors were importers claiming economic loss as a hardship. The *Timken* plaintiffs, on the other hand, faced the loss of a judicial remedy if the preliminary injunction were denied. *See generally Timken*, 6 CIT at 81–82, 569 F. Supp. at 71. The court granted the preliminary injunction holding that, when the economic loss claimed by defendant-intervenors

> [is] balanced against the hardship to Timken – complete loss of its right to judicial review if the liquidation of these entries is not enjoined – the balance of hardships tips decidedly in Timken's favor.

*Id* at 82, 569 F. Supp. at 71. Here, as in *Timken*, the court finds that the economic loss faced by Defendant-Intervenors does not outweigh the prospect of the loss of their legal remedy faced by Plaintiffs. As a result, the balance of hardships favors Plaintiffs.

D.      *The Public Interest*

It is well-settled that the public interest is served by "ensuring that [Commerce] complies with the law, and interprets and applies [the] international trade statutes uniformly and fairly." *See, e.g., Ugine-Savoie Imphy,* 24 CIT at 1252, 121 F. Supp. 2d at 690 (internal quotation omitted). In addition, the public interest is best served when all parties can obtain effective judicial review. *See SKF*, 28 CIT at __, 316 F. Supp. 2d at 1329 (stating "the public interest may be best maintained by 'the procedural safeguard of an injunction pendente lite to maintain the status quo of the unliquidated entries until a final resolution of the merits.'"). "[G]ranting Plaintiffs' motion for preliminary injunction will ensure judicial review of Commerce's

determination and will further the public interest of an accurate assessment of antidumping

duties." *Id.*

Here, Plaintiffs are in a similar position to that described by the court in *SKF*. Plaintiffs

seek this preliminary injunction to ensure that the entries made 90 days prior to the Preliminary

Affirmative Critical Circumstances Determination are subject to any ultimately-determined

antidumping duties. Thus, the court finds Plaintiffs' motion for preliminary injunction to ensure

judicial review of Commerce's determination furthers the public interest of an accurate

assessment of antidumping duties.

CONCLUSION

As Plaintiffs have satisfied their burden of establishing that a preliminary injunction

enjoining the Bureau of Customs and Border Protection from liquidating its entries of Subject

Merchandise is proper, the court grants the Motion for a Preliminary Injunction. The parties

shall consult and submit a proposed joint Preliminary Injunction Order within ten days of the

filing of the order accompanying this Memorandum Opinion.

                                                       /s/Richard K. Eaton
                                                       Richard K. Eaton

Dated: January 27, 2005
          New York, New York